### JONATHAN HILL *vs.* NATHANIEL DAVIS.

*Where one took the goods of another and converted them to his own use, without the license of the owner, it was held, upon an agreed statement of the facts, that the tort might be waived and assumpsit be supported for the price ; although it was agreed, in the statement of the facts, that there was no contract.*

ASSUMPSIT for a quantity of hewn stone sold and delivered.

The cause was submitted to the decision of the court upon the following facts. The plaintiff, in the summer of 1816, contracted to underpin the defendant's house with hewn stone, and the stones, mentioned in the plaintiff's declaration, were furnished for that purpose. But it being found, that the same stones would not answer for that purpose, they were not used, but were left near the house of the defendant by the plaintiff, until the fall of that year, when the defendant built a dairy, and put into it the same stones. In the fall of 1817 there was a final settlement between the parties for the underpinning of the house. There never was any contract for the sale of these stones, but at said settlement, *Hill* said, they were taken without leave, and *Davis*, that they were worth nothing.

*Walker*, for the plaintiff.

*Lyford*, for the defendant.

RICHARDSON, C. J. delivered the opinion of the court.

There are many cases, in which a plaintiff may waive a tort, and thus change the form of his action. Thus it is said, that, when goods are tortiously taken, the trespass of the taking may be waived, and trover be maintained for the conversion. 1 *Burr.* 31.

And where a defendant was nurse to the plaintiff's intestate, and, when he died, went off with the money he had about him ; it was held, that an action for money had and received might be maintained. The court said, that they would presume a subsequent contract, and that the bringing of the action was an admission of a consent to the taking. *Buller's N. P.* 130.

So where property is taken from the owner tortiously, he may waive the tort, and in assumpsit recover the money received by the wrongdoer for the use, as well as for the price,

for which it may have been sold. 1 *N. H. Rep.* 151, *Chauncy vs. Yeaton.*

Where the defendant received of the plaintiff a bill of exchange to get discounted, but, instead of getting it discounted for the plaintiff, paid his own debt with it ; it was held, that an action for money had and received might be maintained. 2 *Starkie* 321, *Oughton vs. West.*

Where an apprentice was seduced from the service of his master, it was held, that the tort might be waived and assumpsit maintained, for the wages of the apprentice, against him, who seduced him. 1 *Taunt.* 112, *Lightly vs. Clouston.* It was said, in that case, not to be competent for the defendant to say, that he obtained the labor of the apprentice not by contract, but by wrong.

And we held here, at September term, 1825, in the case of *Munsey vs Goodwin*, that he, who knowingly employed the apprentice of another, without the consent of the master, was liable to the master in an action for work and labor.

It has also been decided, that *indebitatus assumpsit* will lie for goods, which the defendant by fraud procured the plaintiff to sell to an insolvent person, and which the defendant has gotten into his own possession, 3 *Taunt.* 274, *Hill vs. Perrott.* The court 'said, that the law, in such a case, would imply a promise to pay for the goods, from the circumstance of their having been the plaintiff's property, and having come to the defendant's possession.

There is said to be one case, in which there can be no remedy without waiving the tort, and resorting to an action of assumpsit. Thus, where one tortiously takes a horse, and uses him, and then returns him to the owner, if the wrongdoer die, there is no remedy against his executor or administrator, unless it be an action of assumpsit for the use. *Cowp.* 375, *Hambly vs. Trott.*

An express contract is not necessary to maintain assumpsit. The law will imply a promise in many cases from the nature of the circumstances. Thus, where one entered into land, under a judgment, and occupied it, and the judgment was afterwards reversed, assumpsit was held to lie against him

for the mesne profits. 10 *Mass. Rep.*, *Cummings vs. Noyes.* Indeed the books are filled with cases illustrating this proposition.

In the present case it is agreed, that the stones belonged to the plaintiff, and that the defendant took them, and converted them to his own use. The cases, to which we have alluded, fully warrant us in holding, that the defendant is not to be permitted to say, that he took them by wrong, and not by contract.

It has been contended, that the case states, that there was no contract, and that, therefore, we are not at liberty to say, there was a contract. But it seems to us, that we are bound to understand by that admission, that there was no express contract, and not that there was no contract whatever. For the question submitted to us is, whether assumpsit lies on the facts agreed ; in other words, whether there was any contract express or implied, on which assumpsit might be maintained ; and an admission, that there was no contract express or implied, amounts to an admission, that the action cannot be maintained. This could not have been the intention of the parties ; and we have no hesitation in overruling the objection.

*Judgment for the plaintiff.*